MORRISON *v.* SEMER.

1. TAXATION—REDEMPTION—EQUITY—MAXIMS.

   In a suit by the owner of land to quiet title as against a pur-
   chaser for taxes of certain years, the complainant will be re-
   quired to do equity by refunding, as a condition to relief, the
   validly assessed taxes for the years which the defendant had
   purchased.

2. SAME—NOTICE TO REDEEM.

   A notice to redeem from a tax sale which omits the State and
   county in which the land is situated, is void.

3. SAME—EQUITY—RELIEF.

   But the complainant will be required to pay only the amount
   which defendant paid for a quitclaim deed of a prior tax pur-
   chaser, not the entire amount of the tax and interest.

4. SAME—PAYMENT—PURCHASE OF STATE BID.

   The purchaser of a tax title, who went into possession without
   serving the statutory notice to redeem, was entitled to pur-
   chase of the State the tax title for the year when he went
   into possession, where the tax was assessed to the owner and
   constituted a lien on the land when the purchaser went into
   possession; but was not entitled to compensation for im-
   provements made or taxes paid while he was in wrongful
   possession.

5. SAME—DUTY TO PAY TAX—REDEMPTION.

   Where the tax title purchased was void, the holder was under
   no obligation to pay the tax and might buy the State's title
   based on an assessment made before he took possession.

6. SAME—BURDEN OF PROOF—VALIDITY OF TAX DEED.

   A complainant who seeks to quiet his title to land by attack-
   ing a tax deed has the burden of proving its invalidity.

7. SAME.

   The holder of a tax deed seeking to enforce it must prove its
   validity; and the deed is not *prima facie* evidence thereof.

Appeal from Delta; Stone, J. Submitted November
16, 1910. (Docket No. 98.) Decided December 30,
1910.

Bill by Charles A. Morrison and Dayton W. Closser against Barbara Semer to remove a cloud from the title of certain lands. From a decree awarding to complainants less than the relief claimed, they appeal. Modified and affirmed.

*D. W. Closser*, for appellants.

*Frank D. Mead*, for appellee.

BLAIR, J.  Complainants, the owners of the original title to certain lands in Delta county, filed their bill of complaint in this cause to quiet their title to, and to remove clouds upon their title to, said lands caused by the purchase of certain tax titles by the grantors of defendant, and for the determination of the amount which they should pay to redeem.  Complainant Closser acquired his title March 21, 1908.

The defendant is the widow of Charles J. Semer, and claims under tax titles acquired from her husband, which he had acquired from John McLaughlin and Ezekiel De Camp, for taxes for the years 1892, 1893, 1894, 1897, 1898, 1899, 1900, and 1901, together with rights for taxes of 1895, 1896, 1902, and 1903, by reason of said taxes having been paid as a condition of purchase.  The McLaughlin tax deed, for taxes of 1892 and 1893, was dated December 18, 1897, stating the date of purchase as October 11, 1897. At the same time, State bid was purchased for taxes of 1894, and 1895 and 1896 taxes were paid.  For taxes of 1897, a tax deed was issued to John McLaughlin dated in October, 1904.  The defendant offered in evidence a quitclaim deed from John McLaughlin, conveying the land in controversy to Charles J. Semer, for a consideration of $1 and other considerations, and also offered a quitclaim deed from Ezekiel De Camp, conveying the land in controversy to Charles J. Semer, for a consideration of $150.

The files in the various proceedings involving the tax sales for 1892, 1893, and 1894 were offered in evidence,

together with the circuit court journal. For taxes of 1892, sold in 1894, these records showed that court was in session but four days. For taxes of 1893, sold in 1895, these records showed that court was only in session four days besides the day of hearing. For taxes of 1894, sold in 1896, the records showed that court was in session but four days. The tax records were also introduced in evidence, showing that the land in controversy was included in the petition, decree, and tax records as four separate and distinct 40-acre parcels in the several proceedings for taxes of 1892, 1893, and 1894.

Certain tax notices were also put in evidence by complainants. With reference to these notices, complainant Closser stated:

"*Mr. Closser:* I will offer those served upon myself, and those served upon Mr. Morrison are like them: For 1892 and 1893, gross amount, $39.60; for 1894, gross amount, $17.80; for 1895, gross amount, $19.03; for 1896, gross amount, $13.03. That is the first notice. For 1897, another notice, shows $5.07 for each forty, and the amount separate.

"*The Court:* Any description of the county there?

"*Mr. Closser:* Yes; on this notice, the county and State are in. * * * In the 1903 tax, the forties are separate, and the amount is $6.61 for each forty. The one served on myself was filed February 25, 1909, and the one served on Morrison filed February 10, 1909. I offer these for the purpose of showing that no valid notice has been served on which the time has expired, which has cut off the rights of the complainants.

"*The Court:* When was the bill filed?

"*Mr. Closser:* The bill was filed March 3, 1909."

On the 4th day of February, 1898, McLaughlin served a tax notice on Morrison, then the owner, to redeem within six months, and such redemption not having taken place, and after the expiration of the six months, McLaughlin entered into possession and he and, afterwards, his grantee, Semer, held such possession until Semer's death, May 3, 1907. This notice was void in that the State and county in which the land was situated did not

appear therein. *Tucker* v. *Van Winkle*, 142 Mich. 210 (105 N. W. 607).

The court held and decreed:

"That the complainants should pay the defendant the taxes for the years 1892 to 1896 inclusive, paid by her grantor, John McLaughlin, amounting to $89.46, with interest thereon at 5 per cent. from October 11, 1897, the date of payment, to July 24, 1909, the date of the decree, amounting to $142.92; he also held that the complainants should pay the tax title acquired by the defendant McLaughlin for the year 1897, with the statutory penalty added as a condition of redemption, amounting to $61.66; he also held that complainants should pay to the defendant the sum of $150, with interest at 5 per cent. from March 9, 1906, to July 24, 1909, amounting to $175.32."

From this decree complainants appeal.

The only question presented to the court below, and to us on appeal, is as to the amount which complainants should pay to redeem.

Complainants offered in their bill to reimburse defendant with the amount expended in redeeming from the De Camp tax title, viz., $150, also with the amount paid John McLaughlin for his tax titles, viz., $5; but claim that they should not be required to reimburse defendant with $89.46, under the theory that it was paid by McLaughlin, and interest, making a total of $142.92. They also claim that they should not be required to pay $61.66 for the McLaughlin title for 1897 taxes.

The circuit judge held that the various decrees for the sales for taxes of 1892, 1893, and 1894 were void, for the reason that they were prematurely entered; the court not being in session the requisite five days after the first day of the term, as required by statute. There having been no evidence offered, however, in support of the charge of the bill of complaint showing the invalidity of the taxes for those years, the court held that, in accordance with the maxim that he who seeks equity must do equity, and this being a bill of complaint to quiet title, the complainants should be required to repay these taxes as a condition of

relief—citing *Croskery* v. *Busch*, 116 Mich., at page 289 (74 N. W. 464). It is contended, however, by complainants, that since the defendant's grantor paid to McLaughlin only $5 for a quitclaim deed of his tax titles, that is all she is entitled to recover in any event, and that, furthermore, there was no evidence in the case showing the amount that was actually paid by McLaughlin. We are of the opinion that, since it must be held to be admitted by the pleadings that McLaughlin only received, and Semer only paid, $5 for the tax titles, defendant is equitably entitled to no more; her title having failed, as correctly held by the circuit judge.

As to the tax title for 1897, it does not appear that the title was invalid, and the bill of complaint does not allege its invalidity nor the invalidity of the tax, but alleges the fact to be that:

"Said land after the purchase thereof by said John McLaughlin in October, 1897, was assessed to said John McLaughlin, while he occupied it, and thereafter to said Charles J. Semer, and that the said John McLaughlin and the said Charles J. Semer occupied said land up to the time of the death of said Charles J. Semer, and were therefore in duty bound to pay the taxes on said land; * * * that the various amounts expended by said John McLaughlin for taxes of 1897, 1898, and 1899 were merely payments of said taxes, and that he acquired no further title to said land by reason of his neglect to pay said taxes, and then letting them go to sale and then buying them in."

And again:

"That the sales for taxes of 1897, 1898, 1899, 1900, and 1901, together with the deeds issued pursuant thereto, ought to be set aside so far as the deeds purport to convey any title, and be decreed to be payments of the respective taxes."

And again, in the prayer for relief:

"(3) That the various tax deeds running to John McLaughlin for taxes of 1897, 1898, and 1899 be decreed to be evidences of payment of said taxes only, and not of title."

It was the contention of complainants, as stated in their bill, that defendant McLaughlin having gone into possession of the land in August, 1898, it was his duty to pay these taxes of 1897. The court held, however, that the taxes of 1897 being a lien upon the land when McLaughlin went into possession, there was no reason why he might not purchase and hold title for that year. The bill alleges that the land was assessed to McLaughlin after he went into possession, which was in August, 1898. We are therefore justified in inferring that the taxes for 1897 were assessed against complainant Morrison, whose duty it was to pay them. The defendant's grantors were trespassers, and were therefore entitled to no compensation for improvements made or taxes paid while in wrongful possession of the property, but must content themselves with such benefits as they obtained from the land during their occupancy. *Corrigan* v. *Hinkley,* 125 Mich. 125 (83 N. W. 1020); *Taylor* v. *Roniger,* 147 Mich. 99 (110 N. W. 503); *Cook Land, etc., Co.* v. *McDonald,* 155 Mich. 175 (118 N. W. 959).

McLaughlin, however, owed no duty either to the State or to Morrison to pay the 1897 tax. His tax title was void, and the notice based thereon was void. He had no lien to protect when he entered into possession, and we see no good reason why he was not at liberty to purchase the State's title, based upon an assessment made before he took possession. The tax sale was valid as to this assessment for 1897, the deed was valid, and a valid notice to redeem was served upon defendants. We are therefore of the opinion that the court's decree was correct as to this item.

The title of defendant having failed as to the tax titles for 1892, 1893, and 1894, the payments must be treated as voluntary, and not recoverable by direct proceedings for that purpose. *Croskery* v. *Busch,* 116 Mich. 288 (74 N. W. 464); *Corrigan* v. *Hinkley,* 125 Mich. 125 (83 N. W. 1020); *Bateson* v. *City of Detroit,* 143 Mich. 582 (106 N. W. 1104). When, however, the holders of the

original title seek to vacate the tax deeds, the equitable maxim above referred to will be enforced. *Croskery* v. *Busch, supra.*

The title of defendant did not fail as to the tax deed for the taxes of 1897. The sale is treated as valid in the bill of complaint, and the ground assigned for relief against the tax deed is that it was the duty of defendant's grantor to pay the taxes, which the circuit judge properly held to be incorrect.

If the bill of complaint could be construed to attack the validity of the deed, the burden would be upon the complainants to prove the averment of the bill. Where a party seeks to avoid a tax deed by direct proceedings for that purpose, it is for him to substantiate the charge of its invalidity; but where the holder of the tax deed seeks to enforce it, he must prove its validity, and the deed itself will not be *prima facie* evidence thereof. *Taylor* v. *Deveaux*, 100 Mich. 581 (59 N. W. 250); *McKinnon* v. *Meston*, 104 Mich. 642 (62 N. W. 1014); *Dawson* v. *Peter*, 119 Mich. 274 (77 N. W. 997); *Morse* v. *Auditor General*, 143 Mich. 610 (107 N. W. 317).

The decree, as modified by this opinion, is affirmed.

BIRD, C. J., and HOOKER, MCALVAY, and BROOKE, JJ., concurred.