CARR *v.* BARTELL.

1. APPEAL AND ERROR—DE NOVO REVIEW OF CHANCERY CASE.
   The Supreme Court considers chancery cases *de novo*.

2. EASEMENTS—JOINT DRIVEWAY—PROTECTION—PARTIES.
   Purchasers under a land contract may maintain suit to enjoin interference with use of, and to have obstructions removed

from, joint driveway, located partly on their own land and partly on adjoining premises belonging to defendants who maintained a fence in the center of the driveway.

3. SAME—JOINT DRIVEWAY—FENCES—LICENSE—ADVERSE USER.

Maintenance of a fence by defendants in center of joint driveway for use of plaintiffs and defendants, pursuant to permission or license from former owner of plaintiffs' property, may not defeat plaintiffs' driveway easement under a claim of adverse possession and use.

4. SAME—JOINT DRIVEWAYS—TERMINATION OF USE—BARNS.

Erection and maintenance of a barn as a permanent structure at rear of city lot on portion reserved for joint driveway purposes evidenced an intention to abandon that part of the driveway from the front of such barn to rear of lot and extinguished and terminated the joint easements in such portion.

5. SAME—JOINT DRIVEWAY—REMOVAL OF OBSTRUCTIONS.

In suit to enjoin interference with use of portion of joint driveway easement not abandoned and to require defendants to remove stones, ashes containing nails and other obstructions, decree granting relief as to removal of such matter shown to have been placed there by defendants was proper.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 8, 1943. (Docket No. 22, Calendar No. 42,198.) Decided May 18, 1943. Rehearing denied June 30, 1943.

Bill by Arthur Carr and wife against Joseph Bartell and wife to enjoin interference with use of a joint driveway and for other relief. Decree for plaintiffs. Defendants appeal. Affirmed.

*Alvin A. Neller,* for plaintiff.

*John Wendell Bird,* for defendants.

STARR, J. This case involves a dispute over a joint driveway between residence properties in the city of Lansing.

In 1908 Charles Foster and wife, who owned lot 4, block 186, of the city of Lansing, conveyed the

north ½ of such lot to a predecessor in plaintiffs' chain of title, the deed of conveyance providing: .

"Reserving a strip of land four feet in width off the south side of said above-described land which with a strip of land four feet in width off the north side of the next adjoining same on the south is to be used as a joint driveway."

In 1910 the Fosters conveyed the south ½ of said lot 4 to a predecessor in defendants' chain of title, the deed of conveyance providing:

"Except four feet off the north side which with four feet off the south side of land adjoining the above on the north is to be used as a driveway for occupants of lot four."

The record indicates that subsequent conveyances of these two parcels of land contained substantially the same reservations and provisions regarding the use of four feet off each parcel for joint driveway purposes. In April, 1911, defendants purchased the south ½ of such lot, and since then have used and occupied the same for residential purposes. In April, 1934, plaintiffs purchased the north ½ of such lot on a land contract which contained substantially the same joint driveway reservations. Since their purchase they have occupied and used such land for residential purposes.

In July, 1940, plaintiffs filed bill of complaint, alleging in substance that both parcels of land were subject to the above-mentioned driveway reservations and rights; that defendants had encroached upon and interfered with their use of the driveway by erecting and maintaining a wire fence which extended along the center line of the west (rear) 80 feet of the driveway; and that defendants had placed stones, nails, and other obstructions on the

driveway. Defendants answered, admitting the mutual driveway reservations, but alleging that they had acquired the right to maintain the fence on the driveway by adverse possession and use. In their answer they denied having placed stones, nails, and other obstructions on the driveway and denied plaintiffs' right to the relief sought.

The trial court's opinion determined that the fence in question had been constructed by defendants "under a permissive arrangement" with a former owner of plaintiffs' adjoining property and that their claim of adverse possession could not be predicated on such permissive use. The court also found that about 1914 a predecessor in plaintiffs' chain of title had erected a barn on the rear of his land, which encroached in part on the driveway and which was maintained for about 20 years until removed by plaintiffs. The court determined that the permanent character of the barn and its maintenance for such period of time extinguished the easement in the west portion of the driveway. The court also found that defendants had placed stones, and ashes containing nails, on the east part of the driveway. A decree was entered May 19, 1941, terminating the easement as to the west 51.4 feet of the driveway but ordering defendants to remove the east 38 feet of the fence in question. The decree also ordered them to remove all stones, nails, and other obstructions in the balance of the driveway.

The record indicates that the driveway as created extended the entire length of lot 4, *i.e.,* 165 feet. The trial court's decree, in effect, confirmed the joint driveway rights of the parties in and to the east 113.6 feet and extinguished their joint driveway rights in and to the west 51.4 feet. Defendants appeal. This being a chancery case, we consider the same *de novo.*

As land-contract purchasers plaintiffs were entitled to maintain the present action. The fence in question, which was about 80 feet long and constructed of cedar posts with meshed wire attached, was built by defendants about 1913 and, with some repairs, has been maintained ever since. The record clearly indicates that the fence was built by defendants in pursuance of permission or license from one Theodore Morton, a former owner of plaintiffs' property. Defendant Joseph Bartell testified in part:

"Mr. Morton and I had a talk about putting up the fence before I put it up.   *   *   *

"I said we should have a fence because always people before chased around on his property and my property.   *   *   *

"Mr. Morton said it was O.K. with him. He said go ahead and make one, it is good for both sides. *   *   *   Mr. Morton did not assist me in any way. *   *   *

"Mr. Morton did not pay any part of the costs of the fence and posts. I did not have any talk with him about that.   *   *   *   He (Morton) allowed me to build the fence."

Theodore Morton testified in part:

"I recall that Mr. Bartell (defendant) moved next door in April, 1911.   *   *   *   Mr. Bartell came and asked me to put a fence through there. I gave him permission.   *   *   *

"Mr. Bartell asked permission to put the fence up and I told him to go ahead and put it up.   *   *   *

"I built the barn. The barn was within two or three feet of the fence I should judge. The fence came up past the barn."

The trial court properly determined that, as defendants had built and maintained the fence in pursuance of permission or license from the former owner of plaintiffs' property, they could not defeat

plaintiffs' driveway easement under a claim of adverse possession and use. *Bankers Trust Co.* v. *Robinson,* 280 Mich. 458; *Martin* v. *Allen,* 258 Mich. 504; *King* v. *Battle Creek Box Co.,* 235 Mich. 24; *Berkey & Gay Furniture Co.* v. *Valley City Milling Co.,* 194 Mich. 234.

We agree with the trial court that the building and maintenance of the barn as a permanent structure on a part of the driveway evidenced an intention to abandon that part of the driveway west of the front of the barn, and extinguished and terminated the joint easements in the west 51.4 feet. *Lathrop* v. *Elsner,* 93 Mich. 599; 28 C. J. S. §§ 58, 59, pp. 722, 723; 17 Am. Jur. § 143, p. 1028. Furthermore, in their brief plaintiffs admit that the building and maintenance of the barn operated to extinguish the driveway easements as to the west 51.4 feet of the driveway.

The trial court's decree properly ordered defendants to remove stones, ashes containing nails, and other obstructions which the testimony shows they had placed on the east portion of the driveway.

The decree of the trial court is affirmed. Plaintiffs shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.